R. R. Rivera Correa, Petitioner, *v.* District Court of San Juan, Respondent.

No. 1236. Argued February 24, 1941.—Decided March 28, 1941.

*R. R. Rivera Correa, pro se.* Respondent did not appear.

Mr. Chief Justice Del Toro delivered the opinion of the Court.

The question to be decided in this case is whether in Puerto Rico a marriage can take place before a notary. The matter was brought before the District Court of San Juan and decided in the negative. It comes now in certiorari before this Court. The writ was not issued but the petitioner was fully heard as to the issuance of the writ and the merits of the case.

Accepting, without so deciding, that the remedy used be the proper one to bring the case before this Court, we believe that the district court did not err in deciding that notaries are not authorized by law to perform marriage ceremonies.

The question arose as follows: On December 10, 1940, the petitioner, an attorney and notary, certified in a public deed the performance of a marriage by him as a notary, and presented a copy of the deed, accompanied by the sworn statement of the parties which the law requires, to the Registrar of Vital Statistics of Loíza for its record in the Civil Registry under his custody. The Registrar refused to do so. The petitioner requested the district court to issue a writ of mandamus against him. The court denied the writ.

The petitioner holds that since marriage is a contract (Section 68 of the Civil Code, 1930 ed.) and since the notary is the only officer with authority to solemnize contracts and other extrajudicial acts which may be performed in his presence (Notarial Law, Section 1, p. 143, Comp. Sts. 1911, Sec. 1979), the notary, as well as other persons who are expressed in the law, is authorized to perform marriages, which the keepers of the Civil Registry are bound to record.

Marriage is discussed in Title Third, Book First of the Civil Code. Section 68 (1930 ed.) which by itself is the first chapter of the title, says:.

"Section 68.—Marriage is a civil institution, originating in a civil contract whereby a man and a woman mutually agree to become

husband and wife and to discharge toward each other the duties imposed by law. It is valid only when contracted and solemnized in accordance with the provisions of law; and it may be dissolved before the death of either party only in the cases expressly provided for in this code."

Immediately the necessary requisites to be married are expressed , to wit: 1, the legal capacity of the contracting parties; 2, their consent; and, 3, the authorization and celebration of a matrimonial contract according to the forms and solemnities prescribed by law.

In regulating the third requisite, Section 75 provides:

"Section 75.—That all regularly licensed or ordained priests or other ministers of the Gospel, Jewish rabbis, and judges of the Supreme Court, district or municipal courts, the judge of the United States District Court for Porto Rico, and all justices of the peace, may celebrate the rites of matrimony between all persons legally authorized to marry."

And the following Section begins by ordering that "all persons desirous of contracting marriage shall apply to any of the persons authorized to perform it as per the preceding section."

Therefore, marriage is not a simple civil contract but *a civil institution originating in a civil contract, and it is valid only* when *contracted and solemnized in accordance with the provisions of law,* one of which is that he who desires to get married shall apply *to any of the persons authorized to celebrate the rites of matrimony,* among which the notary is not included.

The question seems so clear to us and is decided in the law in so conclusive a manner that it offers no doubt whatsoever. If we have chosen to decide it with a discussion, it is to remove the cloud which seems to have arisen by virtue of the petitioner's suit, which may induce similar acts to the prejudice of the community.

The notary has his field of action—and a very ample one it is—in regard to marriages. The institution originates in

a civil contract and the Legislature, in regulating contracts in Book Four of the Civil Code, devotes to the "Contracts Relating to Property by Reason of Marriage" all of Title III, which comprises five chapters—Sections 1267 to 1333—the first of which begins by making necessary the services of a notary even before the performance by providing that "persons who may be joined in matrimony may, before celebrating it, execute contracts, stipulating the conditions for the conjugal partnership with regard to present and future property, without any other limitations than those mentioned in this Code," and so it is in many others.

But the celebration of the rites of matrimony, its solemnity, was not entrusted by the legislator to the notary, but to other expressly named: all regularly licensed or ordained priests or other ministers of the Gospel and Jewish rabbis, following the traditional and the actual religious customs, and to the Judges of the Supreme Court, district or municipal courts, justices of the peace and the Judge of the United States District Court for Puerto Rico, following the modern trend, taking into consideration the fact that not all the citizens consider marriage as connected with religion.

An order must be entered denying the issuance of the writ.